UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

00 JUL 25 PM 3:26

U.S. DISTRICT COURT
N.D. OF ALABAMA

BANNER LIFE INSURANCE COMPANY, )
                                )
    Plaintiff and               )
    Counterclaim Defendant,     )
                                )
vs.                             )
                                )
MACK INSURANCE MARKETING, INC., )
                                )
    Defendant, Counterclaim     ) Civil Action No. CV-99-S-3344-NE
    Plaintiff, and Third Party  )
    Plaintiff,                  )
                                )
vs.                             )
                                )
CLYDE WAYNE GREGORY and MARTHA  )
SUTTON,                         )
                                )
    Third Party Defendants.     )

ENTERED

JUL 2 5 2000

MEMORANDUM OPINION

This action is before the court on the motion for summary judgment (doc. no. 13) filed by defendant, counterclaim plaintiff, and third party plaintiff, Mack Insurance Marketing, Inc. For the reasons stated below, the court finds Mack's motion is due to be granted in part and denied in part.

I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." (Emphasis added.)   The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See Celotex Corp.* v. *Catrett* , 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark* v. *Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case.  *Jeffery* v. *Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(*per curiam*).  Rule 56 permits the movant to discharge this burden with or without supporting affidavits.  *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.  When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial.  *See Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See Spence*

v. *Zimmerman*, 873 F.2d 256 (11th Cir. 1989).  Inferences in favor of the non-movant are not unqualified, however.  "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted).  Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment.  *See Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988).  A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).  The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

With the foregoing standards in mind, the following facts either are not disputed, or are stated in the light most favorable to Bananer.

## II. FACTUAL BACKGROUND

Banner Life Insurance Company ("Banner") and Mack Insurance Marketing, Inc. ("Mack") executed a general agent agreement in 1989, by the terms of which Mack was licensed to sell Banner insurance products.[1] Under the terms of this agreement, Banner "authorized [Mack] to develop and manage a sales force within a non-exclusive area assigned by us and accept full responsibility for the actions of the sales force."[2] Clyde Wayne Gregory ("Gregory") was appointed by Mack in July of 1990 to sell Banner products in Madison County, Alabama.[3]

That same year, Banner developed and funded Agency Builders Reinsurance, Inc. ("ABRe"), "an independent general agent-owned reinsurance company."[4] Banner explains the concept of "reinsurance," as follows:

Just as individuals buy insurance to share their risks,

---

[1] Gilbertson's affidavit ¶ 2; Mack's affidavit ¶ 2.

[2] Mack's affidavit exhibit 1 ¶ 3(b).

[3] *Id.* ¶ 3, exhibit 2; Gilbertson's affidavit ¶ 2 (stating that "Mack's sales force included ... Gregory...").

[4] Gilbertson's affidavit, exhibit B.

> insurance companies "buy" insurance to share theirs.   The
> transfer of risk from one insurance company to another is
> called reinsurance.   One company cedes (or transfers)
> business to another: the company accepting the risk is the
> reinsurer. ...   Under an indemnity (risk) reinsurance
> agreement, the company from which the policy is originally
> purchased remains responsible for service and all policy
> transactions and obligations. [5]

Banner established ABRe "to provide additional financial incentives

for a group of Banner Life general agents ... by reinsur[ing] a

small portion of mortality risk associated with certain life

insurance policies sold by or through Banner Life general agents who

were shareholders of ABRe."[6]  Mack became one of ABRe's shareholders

in 1992.[7]

The parties subsequently executed a brokerage general agent

agreement ("brokerage agreement") in late 1996, which allowed Mack

and its agents to sell Banner products that were not covered by the

general agent agreement.[8]  The parties dispute the significance of

this agreement.  Banner contends that "the 1996 Brokerage General

Agent Agreement did not replace or terminate the 1989 General Agent

Agreement between Banner Life and Mack,"[9] whereas Mack contends

that the brokerage agreement superceded the prior general agent

---

[5] Gilbertson's affidavit at exhibit B.

[6] Id. ¶ 4.

[7] Mack's affidavit ¶ 4, exhibit 3.

[8] Id. ¶ 3.

[9] Gilbertson's affidavit ¶ 3.

agreement,[10] and, that ABRe was dissolved "[i]n connection with the termination of the Banner/Mack General Agent Agreement."[11]  In any event, Gregory was not appointed under the brokerage agreement and, therefore, operated as Banner's agent only under the general agent agreement.[12]

The shareholders of ABRe, including Mack, approached Banner in late 1996 about liquidating ABRe's assets.[13]

> ABRe's owners, including Mack, wanted Banner Life to agree on a present value sum to be paid for their respective stock interests in ABRe.  Banner Life was agreeable to such a liquidation only if Mack and the other owners of ABRe were prepared to agree to the amount of debt they owed Banner Life.  ABRe's shareholders threatened litigation against Banner Life based on alleged promises regarding Banner Life's "commitment" to ABRe. ... After extensive negotiations and actuarial computations, ABRe was dissolved, with Banner Life paying to ABRe's shareholders, including Mack, a present value lump sum equal to the individual shareholders' respective proportional interests in ABRe, less the agreed upon amount of debt owed by each individual shareholder, including Mack....[14]

In connection with the dissolution of ABRe, and due "to the threatened litigation," Banner "insisted that ABRE's shareholders release Banner from any claims relating to ABRe."[15]  Accordingly, Mack, as a shareholder of ABRe, and Banner executed a mutual general

---

[10] Mack's affidavit ¶ 5.

[11] *Id.* ¶ 8.

[12] *Id.* ¶ 7.

[13] Gilbertson's affidavit ¶ 5.

[14] *Id.* ¶ 5.

[15] *Id.*

release in September of 1997, the relevant portions of which are set forth below:

### Mutual General Release

This mutual general release ("Mutual Release") is made between Mack Insurance Marketing, Inc., a Utah corporation, and Richard Mack (together, the "Mack Insurance Group"), on the one hand, and Banner Life Insurance Company, a Maryland corporation ("Banner Life"), on the other hand.

. . .

WHEREFORE:

1.  For and in consideration of the mutual general release contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each member of the Mack Insurance Group forever releases, discharges and acquits Banner Life from any and all claims, suits, contracts, debts, obligations, covenants, promises, demands, liabilities, damages, judgments, and causes of action in law and equity (including, but not limited to, causes of action based on contract (express or implied) and tort (including, but not limited to, negligence, breach of fiduciary duty, conspiracy and fraud)) of any kind whatsoever, known or unknown, suspected or unsuspected, contingent or absolute, that each of any member of the Mack Insurance Group ever had, may now have, or hereafter can, shall or may ever have, against Banner Life at any time to the day of the date of this Mutual Release, <u>which relate to Agency Builders Reinsurance, Inc., including but not limited to, any business reinsured by Agency Builders Reinsurance, Inc</u>.

2.  For and in consideration of the mutual releases contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Banner Life forever releases, discharges and acquits each member of the Mack Insurance Group, from any and all claims, suits, contracts, debts, obligations, covenants, promises, demands, liabilities, damages, judgments, and causes of

7

action [in] law and equity (including, but [sic] limited to, causes of action based on contract (express or implied) and tort (including, but not limited to, negligence, breach of fiduciary duty, conspiracy and fraud)) of any kind whatsoever, known or unknown, suspected or unsuspected, contingent or absolute, that Banner Life ever had, may now have, or hereafter can, shall or may every have, against each or any member of the Mack Insurance Group at any time to the day of this Mutual Release, <u>which relate to Agency Builders Reinsurance, Inc., including but not limited to, any business reinsured by Agency Builders Reinsurance, Inc</u>.

3.     Each of the parties hereto covenants that such party will not make, assert, or maintain any claim, demand, action, cause of action, suit or proceeding against any person or equity that such party has released herein, <u>relating to Agency Builders Reinsurance, Inc., including but not limited to, any business reinsured by Agency Builders Reinsurance, Inc.</u>

4.     Each of the parties hereto acknowledges that such party may hereafter discover facts different from or in addition to those facts which such party now knows or believes to be true with respect to the matters herein released, and agrees that this Mutual Release shall be and remain in effect in all matters herein released, and agrees that this Mutual Release shall be and remain in effect in all respects as complete general releases as to the matters herein released, notwithstanding any such different or additional facts.  Each party agrees to assume the risk of any subsequent discovery or understanding of any matter, in fact or law, which if now known or understood in any way affect this Mutual Release.  Each party acknowledges and agrees that it will make no argument that this Mutual Release was entered into by mistake or ignorance of fact or law and each agrees that it will not undertake to invalidate this Mutual Release in whole or in part.

5.     Notwithstanding anything herein to the contrary, neither party releases the other with respect to any claim, demand, action, cause of action, suit or proceeding pertaining to enforcement of the Mack Insurance Agreement entered into by and between the Mack Insurance Group, Agency

8

> Builders Reinsurance Inc. and Banner Life, dated of even date
> herewith, or the Master Agreement entered into by and among
> Banner Life, BDWA Group, Agency Builders Reinsurance Inc.,
> Equity Insurance Mortgage Services Inc., First International
> Benefits Marketing Group Inc., Mack Insurance Marketing Inc.,
> Penn Equities Inc., James Eberhardt, Richard Mack, Marvin
> Pitcock, Linda Pitcock and Marvin Raff.[16]

Four months after the execution of the general release, Banner learned that Gregory had been arrested during December of 1997 on charges of "theft and fraud in connection with his sales of insurance, annuities, and investment products."[17]   Although Banner had terminated its contractural subagent relationship with Gregory on August 1, 1997, due to low sales production,[18] it had no prior knowledge that he was involved in criminal activity.   "After learning of Gregory's arrest, Banner Life began contacting his clients to determine whether the criminal charges against him were related to his activities on behalf of Banner Life as an agent of Mack."[19]   Representatives of Banner met with several of Gregory's clients during February of 1998, and subsequently concluded "that for a period of years Gregory simply had been stealing money from his clients."[20]   Specifically, Banner obtained evidence that numerous clients "had paid money directly to Gregory for the purchase of a

---

[16] Mack's affidavit at exhibit 5 (emphasis supplied).

[17] Gilbertson's affidavit ¶ 6.

[18] Mack's affidavit at exhibit 6.

[19] *Id.* ¶ 7.

[20] *Id.*

9

Banner Life product which they either did not receive, or which cost less than the amount paid by the client to Gregory."[21]  Banner began issuing checks in March of 1998 to compensate Gregory's former clients for the money they lost.[22]  To date, "Banner has paid more than $3,000,000."[23]

Banner instituted the present action against Mack on December 17, 1999, seeking reimbursement for the funds expended to rectify Gregory's conduct.  Banner claims that Mack negligently hired and supervised Gregory, and breached the terms of the general agent agreement.

## III.  DISCUSSION

Mack asserts two grounds for the dismissal of Banner's claims. It principally contends that all of Banner's claims are barred by the terms of the general release.  Mack also argues that Banner's negligent hiring and supervision claim is barred by the statute of limitations. The court will address each contention separately.

### A. General Release

Mack argues that the plain language of the general release bars both causes of action advanced in Banner's complaint.  Specifically, Mack asserts that the release is broadly worded; it excludes "causes

---

[21] *Id.* ¶ 8.

[22] *Id.*

[23] *Id.*

10

of action based on <u>contract</u> (express or implied) and tort (including but not limited to, <u>negligence</u>, breach of fiduciary duty, conspiracy and fraud)"[24]; and the document is entitled a "general release." Mack also argues that "the parties contemplated and contracted for the eventuality that unknown facts might later come to light..." and, therefore, disregards the fact "[t]hat neither party knew of Gregory's wrongdoing [a]s an insufficient ground on which to ignore the release."[25]

Banner disputes that the release operates to bar the claims asserted in this action; it contends the "release operates only to conclude all matters relating to ABRe's business, to Mack's purchase of stock in ABRe, and to the dissolution of ABRe."[26] Banner argues that "the unambiguous terms of the release indicate that the parties only intended to release those claims which 'relate to' the business of ABRe."[27]

The "threshold question" before this court is whether the release signed by Banner and Mack in September of 1997 is ambiguous. *See Brown v. Continental Casualty Insurance Company*, 604 So. 2d 351, 352 (Ala. 1992) (quoting *Baker v. Blue Circle, Inc.*, 585 So. 2d 868, 870

---

[24] Mack's affidavit at exhibit 5, ¶ 2 (emphasis supplied).
[25] Mack's motion (doc. no. 13) at 8.
[26] Banner's brief (doc. no. 20) at 3.
[27] *Id.* at 5.

(Ala. 1991)).  "In order to determine whether the language of the release was unambiguous, [the court] must give the words of the release their ordinary meaning." *Regional Health Services, Inc. v. Hale County Hospital Board*, 565 So. 2d 109, 112 (Ala. 1990); *see also Brown*, 604 So. 2d at 352 (quoting *Baker*, 585 So. 2d at 870)).

"If the release is unambiguous, its construction and legal effect [are questions] of law, which under appropriate circumstances, may be decided on a motion for summary judgment." *Brown*, 604 So. 2d at 352 (quoting *Baker*, 585 So. 2d at 870)).  If this court determines that the release in unambiguous, it is mindful of the edict that written releases "must have effect according to their terms and the intentions of the parties thereto."   Alabama Code § 12-21-109 (1975).

> In the absence of fraud, a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties to be judged from what appears within the four corners of the instrument itself and parol evidence is not admissible to impeach it or vary its terms.

*Pruitt v. Circuit City Stores, Inc.*, 678 So. 2d 1166, 1168 (Ala. Civ. App. 1996) (quoting *Conley v. Harry J. Whelchel Co.*, 410 So. 2d 14, 15 (Ala. 1982)).

On the other hand, "[i]f the terms of the release are ambiguous, then the intention of the parties is to be determined as a question

of fact, and parol evidence is admissible on that question." *Nix v. Henry C. Beck Company*, 572 So. 2d 1214, 1217 (Ala. 1990).

The court finds no ambiguity in the release executed by Banner and Mack. Specifically, the court finds that Banner agreed to release all claims against Mack "which <u>relate to Agency Builders Reinsurance, Inc.</u>, including but not limited to, any business reinsured by Agency Builders Reinsurance, Inc."[28] The "relate to" language contained in paragraphs one, two, and three clearly limits the release only to those claims that relate to ABRe. It does not bar every conceivable claim that Banner might bring against Mack.

The problem here, however, lies in determining whether Banner's claims against Mack actually "relate to" ABRe. Unfortunately, the parties have submitted very little evidence, due in part to the timing of Mack's motion for summary judgment, and the court must make its decision solely on the basis of two affidavits, one from Richard Mack, the president of Mack Insurance Marketing, Inc., and the other from Gene R. Gilbertson, the senior vice-president and chief financial officer of Banner Life Insurance Company.

In his affidavit, Mack contends that ABRe dissolved "[i]n connection with the termination of the Banner/Mack General Agent Agreement." Additionally, Mack also contends that the policies

---

[28] Mack's affidavit at exhibit 5 ¶ 2.

13

written by Gregory "directly 'relate to' sales made under Mack's General Agreement with Banner, which was the 'business reinsured by [ABRE].'"[29]

On the other hand, Gilbertson denies that the general agreement was terminated,[30] and that the dissolution of ABRe was connected with the general agreement or the brokerage agreement. Gilbertson also avers that "ABRe never acted as a reinsurer with respect to annuities sold by Banner Life agents,"[31] including Gregory. Banner summarizes Gilbertson's testimony as follows:

> Banner Life had two separate and distinct relationships with Mack: (1) an agency relationship under which Mack agreed to "develop and manage a sales force" to sell Banner Life products and to "accept full responsibility for the sales force," in exchange for compensation in the form of commissions and; (2) a relationship based upon Mack's investment as a shareholder in [ABRe].... The independent relationships were governed by separate contracts that bear no relation to each other. The only relationship at issue in this case is the agency relationship between Banner Life and Mack.[[32]]

Based on this conflicting evidence, the court finds that genuine issues of material fact exist, and summary judgment is due to be denied.

---

[29] Mack's motion at 9; Mack's affidavit ¶ 4.

[30] *See supra* text accompanying notes 8-10.

[31] Gilbertson's affidavit ¶ 4.

[32] Banner's brief at 2.

## B. Negligent Hiring and Supervision

Additionally, Mack contends that Banner's negligent hiring and supervision claim is due to be dismissed, because it is barred by Alabama's two year statute of limitations.  *See* Alabama Code § 6-2-38.  Specifically, Mack argues that "Banner's negligent hiring and supervision claim accrued no later than August [1] 1997 [——] when Gregory was terminated —— more than two years before Banner filed its Complaint in December 1999."[33]

In Alabama, the statute of limitations for negligence actions is two years, regardless of "whether the liability is direct or based upon the doctrine of respondeat superior."  *Booker v. United American Insurance Company*, 700 So. 2d 1333, 1339 (Ala. 1997).  Section 6-2-38 of the Alabama Code provides in pertinent part:

> (l) All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.
> . . .
> (n) All actions commenced to recover damages for injury to the person or property of another wherein a principal or master is sought to be held liable for the act of conduct of his agent, servant, or employee under the doctrine of respondeat superior must be brought within two years.

Thus, in order for Banner's negligence claims to be timely, this lawsuit must have been filed within two years of the date that Banner's negligence claim accrued.  *See Booker*, 700 So. 2d at 1339.

---

[33] Mack's brief at 12.

In determining when Banner's negligence claim accrues, Mack urges this court to follow the opinions of the Alabama Supreme Court in *Henson v. Celtic Life Insurance Company*, 621 So. 2d 1268 (Ala. 1993), and *Booker*, 700 So. 2d 1333. In *Henson*, the plaintiff's father contacted defendant Jones, an insurance agent, about purchasing health insurance. *Henson*, at 1271. Jones agreed to write a policy for plaintiff, but stated that the policy would exclude her epileptic condition. *Id*. at 1271. Unbeknownst to plaintiff, the policy also contained an eligibility requirement, mandating that plaintiff had to work a minimum of 30 hours per week to maintain coverage. *Id*. Plaintiff completed the policy application on September 23, 1987. *Id*. When plaintiff was later hospitalized for a depressive condition, Celtic Life Insurance Company ultimately refused to pay her claim in August of 1989 due to the fact that plaintiff was unemployed. *Id*. at 1272.

Plaintiff subsequently sued both Celtic and Jones, alleging, among other things, that defendants were negligent and/or wanton in their failure to inform her of the contract's employment requirement. *Id*. at 1274. Although plaintiff conceded that her injury occurred on September 23, 1987 (the date that she completed the insurance application), she argued that her claims were not

barred by the statute of limitations because she did not discover the injury until August 1989 (the date Celtic refused to pay her insurance claim). *Id.* The Alabama Supreme Court rejected plaintiff's theory, holding that her negligence and wantonness claims accrued on the date that she completed her application. The *Henson* court explained that "[t]here is ... no 'discovery rule' to toll the running of the limitations period with respect to negligence and wantonness actions; the discovery rule in Alabama is applicable only to fraud actions." *Henson*, 621 So. at 1274 (citing Alabama Code § 6-2-3 (stating that a fraud "claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must be given two years within which to prosecute his action")).

Moreover, the Alabama Supreme Court endorsed its holding in *Henson* in a later decision. *See Booker*, 700 So. 2d 1339-1340. In *Booker*, two claimants sued United American Insurance Company because United American failed to reimburse them under the terms of a hospitalization policy. *Booker*, 700 So. 2d at 1335. The claimants alleged that they had purchased the policy based on misrepresentations from James Butcher, an individual who falsified his identity as an agent of United American. *Id.*, at 1334. Butcher was not hired by United American but, in fact, was hired secretly by

Richard Stone, an agent of United American, and was working from an
office in Stone's home. *Id*. Plaintiffs contended that United
American should be held vicariously liable for the
misrepresentations of Butcher, as well as liable for negligently and
wantonly supervising Stone.

The Alabama Supreme Court held that plaintiffs' negligence and
wantonness claims were barred by the statute of limitations. In
declaring these claims untimely, the court stated:

> It is well settled that a negligence cause of action accrues
> when the plaintiff can first maintain the action, regardless
> of whether the full amount of damage is apparent at the time
> of the first injury. ... In *Henson*, ... this Court held that
> the plaintiff's completion of an application for a health
> insurance policy started the running of the two-year
> limitations period for a negligence action. Further, in
> *Henson*, ... this Court commented that an action for inducing
> a plaintiff to give up an old insurance policy in favor of a
> new policy accrued when the plaintiff gave up the old policy.
> In this case, as in *Henson*, ... the [plaintiffs] admit that
> any negligence or wantonness on the part of Stone or United
> American occurred, at the latest, in May 1991, when the
> [plaintiffs] signed the application and wrote the check for
> the policy. Thus, their claims accrued in May 1991. Because
> the Bookers filed their complaint in August 1993 — over two
> years after their complaint accrued — their negligence and
> wantonness claims are time-barred.

*Booker*, 700 So. 2d at 1339-1340 (quoting *Henson*, 621 So. 2d at 1271-
1274 (citations omitted)).

Banner contends *Booker* is distinguishable, because it "involved
an <u>insured's</u> claim of negligent supervision of an agent against the

insurer."[34]    Moreover,  Banner  contends  that  it,  <u>unlike</u>  the

individuals insured in *Booker*, did not suffer injury "until Banner

Life settled the first claim from one of Gregory's victims in March

1998."[35]  Banner explains:

> Gregory's  customers'  causes  of  action  for  negligent
> supervision against Banner Life began to accrue when they
> completed the various applications for Banner Life products
> and gave Gregory their money, <u>because they suffered immediate
> injury</u>.  However, it wasn't until after the customers made
> claims against Banner Life based upon the actions of Gregory,
> and Banner Life settled the first claim, that Banner life
> suffered legal injury giving it a cause of action for
> negligence against Mack.  Because Banner Life did not have a
> cause of action against Mack until March 1998, Banner Life's
> claims for negligent hiring and supervision, which were filed
> within 2 years of March 1998, were timely filed.[36]

Banner also argues that *McWilliams v. Union Pacific Resources

Company*, 569 So. 2d 702, 704 (Ala. 1990), supports its argument.

In  particular,  Banner  relies  on  the  following  language  in

*McWilliams*:

> [T]here are cases where the act complained of does not itself
> constitute a legal injury at the time, but plaintiff's injury
> only comes as result of, and in furtherance and subsequent
> development of, the act defendant has done.  In such cases,
> the cause of action "accrues," and the statute of limitation
> begins  to  run,  "when  and  only  when,  the  damages  are
> sustained."

*McWilliams*, 569 So. 2d at 704.

---

[34] Banner's brief at 9.

[35] *Id.* at 8.

[36] *Id.* at 9 (emphasis supplied).

The court, however, finds the holding in *McWilliams* to be
inapplicable.   Rather, *McWilliams* is one of a series of cases
discussing the accrual of the statute of limitations in actions to
recover damage to real property.   *See Rumford v. Valley Pest
Control*, 629 So. 2d 623, 627 (Ala. 1993) ("As expressed with more
particularity, 'an action for <u>damage to land</u> accrues, for
limitations purposes, upon discovery of the first actionable
injury'") (quoting *McWilliams*, 569 So. 2d at 706 (Maddox, J.,
concurring specially) (emphasis supplied)); *Dorsey v. Bowers*, 709
So. 2d 51, 56 (Ala. Civ. App. 1998) (stating that an "[a]ction for
injury or damage <u>to property</u> 'accrues ... on the date of the injury
or damage, and not upon the occurrence of the negligence itself, or
the last known negligent act'") (quoting *Rumford v. Valley Pest
Control, Inc.*, 629 So. 2d 623, 627 (Ala. 1993) (emphasis supplied)).

   This court follows the holdings in *Booker* and *Henson* and finds
that Banner's cause of action accrued no later than the date of
Gregory's termination.   Simply put, if Gregory actually defrauded or
converted funds from Banner's insureds, such action occurred <u>during</u>
his employment.   Any policies that Gregory wrote (or fraudulently
failed to write) on behalf of Banner were undeniably written at
various times during the course of his employment.   His authority to

sell Banner Life products _dissipated_, however, when Banner terminated Gregory's contractual subagent agreement.   Therefore, under the holdings in _Banner_ and _Henson_, the statute of limitations regarding Gregory's individual negligent and wanton conduct runs from the date that Gregory's customers signed applications for Banner insurance policies.

Likewise, any negligence attributable to Mack for its failure to properly supervise Gregory, in his capacity as a subagent of Banner, ceased on August 1, 1997, when Banner terminated its contractual relationship with Gregory.   The effect of terminating Gregory's subagent contract, was to simultaneously terminate Mack's duty to supervise Gregory's transactions with Banner insurance products.   As the Supreme Court of South Dakota noted:

> [W]e have steadfastly adhered to the occurrence rule, which requires that the statute of limitations begins from the time when the wrongful act occurred, not when it was discovered by the plaintiff.
> . . .
> Count[s] I and II involve [defendant's] conduct only as it relates to its employment of Lenz, and it is logical that we limit that responsibility to the time during which [defendant] employed Lenz, as did the trial court.  The claim made in Count II is that [defendant] was negligent in hiring, supervising, and retaining Lenz.  Any claim of negligence in this respect cannot survive beyond the point in time when [defendant] no longer employed Lenz.  It is illogical to contend [defendant] negligently supervised or retained Lenz after Lenz left its employment; once Lenz left[,] [defendant] had no right to supervise or direct Lenz.  Surely, [defendant] could not be liable for negligent retention of

Lenz once it no longer retained him.

*Rehm v. Lenz*, 547 N.W.2d 560, 566-567 (S.D. 1996).  Because Banner filed its complaint more than two years after it terminated Gregory's ability to sell Banner products, its negligent hiring and supervision claim is barred by Alabama's two-year statute of limitations.  Accordingly, this claim is due to be dismissed.

### IV.   CONCLUSION

Based on the foregoing, Mack's motion for summary judgment is due to be denied with respect to Banner's breach of contract claim, but granted with respect to Banner's negligent hiring and supervision claim.  An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this **25**th day of July, 2000.

United States District Judge